<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLIA BRADY,<br><br>    Plaintiff,<br>v.<br><br>STATE OF NEW JERSEY JUDICIARY, CHIEF JUSTICE STUART RABNER, JOHN DOE 1-5 AND JOHN DOE ENTITY 1-5,<br><br>    Defendants. | Civil Action No. 21-07895<br><br>**MEMORANDUM OPINION** |

**<u>CASTNER, District Judge</u>**

  This matter comes before the Court by way of a Motion to Dismiss filed by Defendants State of New Jersey Judiciary (the "State Judiciary") and Chief Justice Stuart Rabner ("Chief Justice Rabner") (collectively, "Defendants"). (ECF No. 27.) Plaintiff Carlia Brady opposed the Motion to Dismiss (ECF No. 29), and Defendants replied (ECF No. 30). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, and for good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

I.   **BACKGROUND**

The following facts are from Plaintiff's Amended Complaint.[1] Plaintiff was appointed as a New Jersey Superior Court Judge approximately seven years before this action. (Am. Compl. ¶ 2, ECF No. 21.) Several months after her appointment, Plaintiff was arrested based on allegations that she was harboring a fugitive from law enforcement. (*Id.* ¶¶ 3-4.)

On May 13, 2015, Plaintiff was indicted on one count of second-degree official misconduct and two counts of third-degree hindering the apprehension or prosecution of another. (*Id.* ¶ 6.) The official misconduct charge was dismissed by the New Jersey Superior Court, Law Division on March 1, 2016. (*Id.* ¶ 7.) The Appellate Division confirmed the dismissal of that charge on September 11, 2017. (*Id.* ¶ 8.) The remaining two counts of third-degree hindering the apprehension or prosecution of another were dismissed by the State on March 2, 2018. (*Id.* ¶ 9.)

As a result of her arrest and indictment, Plaintiff was suspended from her position as a Superior Court Judge from June 12, 2013 to March 5, 2018. (*Id.* ¶ 11.) Plaintiff was not paid during her roughly five-year suspension. (*Id.*) Plaintiff was reinstated to active duty as a Superior Court Judge on March 6, 2018. (*Id.* ¶ 12.) Shortly thereafter, on May 4, 2018, the Advisory Committee on Judicial Conduct (ACJC) filed a disciplinary Complaint that charged Plaintiff with violating several canons of the Code of Judicial Conduct related to the dismissed criminal charges. (*Id.* ¶ 14.) On September 16, 2019, the ACJC concluded that Plaintiff had violated the Code of Judicial Conduct and recommended that she be removed from office. (*Id.* ¶16.)

On August 6, 2020, the New Jersey Supreme Court agreed with the ACJC's findings that Plaintiff had violated the Code of Judicial Conduct, but decided to suspend Plaintiff from her

---

[1]   For purposes of this Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 223 (3d Cir. 2008).

2

position as a Superior Court Judge for three months instead of removing her from office. (*Id.* ¶ 17.)

Plaintiff filed her initial complaint in this action on April 1, 2021, and an Amended Complaint on January 12, 2022. The action is against the State Judiciary and Chief Justice Rabner to "compel compliance with N.J. Const. Art. VI., § 6, Para. 6. (prohibiting a diminution of judicial salaries) and U.S. Const. amend XIV, § 1 (prohibiting state deprivation of property without due process of law)," and to recover backpay for the five-year period when she was suspended from the bench. (Am. Compl. ¶¶ 19-20.)

Defendants moved to dismiss the Amended Complaint. ("MTD," ECF No. 27-1.) Plaintiff opposed Defendants' Motion (Opp'n, ECF No. 29), and Defendants submitted a Reply (Reply, ECF No. 30).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move at any time to dismiss the Complaint for lack of subject matter jurisdiction on either facial or factual grounds. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff." *Gould Electronics Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

"Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a proceeding for lack of subject-matter jurisdiction . . . including lack of jurisdiction due to Eleventh Amendment immunity." *Nemeth v. Office of the Clerk of the N.J. Superior Court*, Civ. No. 19-16809, 2020 WL 2537754, at *2 (D.N.J. May 19, 2020). State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015). Once a challenge to jurisdiction is raised under Rule 12(b)(1), Plaintiff bears the burden of demonstrating the existence of subject-matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

## III. DISCUSSION

### A. Plaintiff's Claims Against the State Judiciary and Chief Justice Rabner in His Official Capacity

Plaintiff's Amended Complaint asks this Court to direct Defendants "to adhere to N.J. Const. Art. VI., § 6, Para. 6 as well as U.S. Const. amend XIV, § 1, and remit Plaintiff's backpay of salary" pursuant to the Declaratory Judgment Act. (Am. Compl. ¶¶ 20, 22.) Plaintiff asserts that her "Declaratory Judgment Action seeks only equitable and prospective relief. Specifically . . . Plaintiff seeks recovery of her judicial salary (i.e., equitable relief) and an injunction preventing the New Jersey Judiciary's ongoing wrongful interference with Plaintiff's right to the possession of her judicial salary (i.e., prospective relief)." (Opp'n 10.)

#### 1. The State Judiciary

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by [its] own citizens.'" *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). Moreover, "the Amendment afford states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought." *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. No. 19-21389, 2020 WL 7237947, at *7 (D.N.J. Dec. 9, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)), *aff'd sub nom.*, 858 F. App'x 558 (3d Cir. 2021).

Critical here, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest."

5

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt*, 340 F. App'x at 836 ("Eleventh Amendment immunity applies to state entities and officials if 'the state is the real, substantial party in interest.'") (citation omitted). "The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

As noted, the Eleventh Amendment bars not only suits against states themselves, "but also suits for damages against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted). For purposes of the Eleventh Amendment, the State Judiciary is an arm of the state. *See Greene v. Cty. of Essex*, Civ. No. 20-14723, 2022 U.S. Dist. LEXIS 234302, at *12 (D.N.J. Dec. 30, 2022) ("[T]he New Jersey Judiciary . . . [is] indisputably a component of the State of New Jersey and therefore entitled to the protections of the Eleventh Amendment as well." (citing *Robinson v. N.J. Mercer Cty. Vicinage-Family Div.*, 514 Fed. Appx. 146, 149 (3d Cir. 2013))); *see also Dongon v. Banar*, 363 Fed. Appx. 153, 156 (3d Cir. 2010) ("[S]tate courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."); *Gencarelli v. Superior Ct. of N.J.*, Civ. No. 04-3332, 2005 WL 1490590, at *3 (D.N.J. June 21, 2005) ("It is settled law in New Jersey that the state judiciary is an integral part of the state and, consequently, all claims against it are

barred by the Eleventh Amendment." (citing *Hunter v. Supreme Ct. of N.J.*, 951 F. Supp. 1161, 1177 (D.N.J. 1996), *aff'd sub nom.*, 118 F.3d 1575 (3d Cir. 1997))).

The Court concludes that the Judiciary is immune from suit regardless of the nature of relief Plaintiff seeks—money damages or equitable relief. Courts "have routinely held that sovereign immunity applies to a state or state agency, regardless of whether legal or equitable relief is sought." *ASAH v. N.J. Dep't of Educ.*, Civ. No. 16-3935, 2017 WL 2829648, at *8 (D.N.J. Jun. 30, 2017) (noting the Amendment's express application "to suits in equity as well as at law" (citing *Halderman*, 465 U.S. at 100-01)); *Thorpe v. New Jersey*, 246 Fed. Appx. 86, 87 (3d Cir. 2007) ("The Eleventh Amendment . . . protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own immunity.")); *see also Clark v. State Dep't of Health*, Civ. No. 12-7763, 2016 WL 4265724, at *4 (D.N.J. Aug. 12, 2016) (same).

The cases Plaintiff relies on to argue otherwise are inapplicable as to this point, as those cases involved statues that specifically waive sovereign immunity or provide statutory authority for the Court to authorize financial reimbursement. *See Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988) (noting that an amendment to the section of the Administrative Procedure Act at issue "eliminat[ed] the defense of sovereign immunity in cases covered by the amendment"); *Mantilla v. United States*, 302 F.3d 182, 186 (3d Cir. 2002) (permitting plaintiff to "assert his equitable claim 'via the waiver of sovereign immunity found in section 702 of the Administrative Procedure Act'" (quoting *Foehl v. United States*, 238 F.3d 474, 478 (3d Cir. 2001))); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985) (holding that "procedural safeguards" in the Education of the Handicapped Act empowered courts in certain circumstances "to order

school authorities to reimburse parents for their expenditures on private special education for a child").

Regardless of how they are framed, Plaintiff's claims against the State Judiciary are barred by the Eleventh Amendment. Ultimately, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Banks v. Court of Common Pleas FJD*, 342 F. App'x 818, 820 n.1 (3d Cir. 2009). And "[b]ecause a judgment in this action would adversely affect the State of New Jersey," the Court concludes that the State Judiciary "is immune from liability arising out of a suit against it in federal court, unless Plaintiff['s] claims fall within an exception to the doctrine of sovereign immunity." *ASAH*, 2017 WL 2829648, at *7.

As mentioned, there are two exceptions to the Eleventh Amendment's barring individuals from suing states:

> First, Congress may authorize such a suit under its power "to enforce the Fourteenth Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). Under this exception, Congress abrogates a state's sovereign immunity "when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'" *Garrett*, 531 U.S. at 363 (quoting *Kimel v. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Second, a state may waive its sovereign immunity by consenting to suit. *Coll. Sav. Bank*, 527 U.S. at 670 (citing *Clark v. Barnard*, 108 U.S. 436 (1883)); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

[*Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).]

For starters, there is no allegation or indication that the State Judiciary has consented to suit. *See Talbert v. Judiciary of N.J.*, 420 F. App'x 140, 141 (3d Cir. 2011) ("The New Jersey court system is an unconsenting state entity entitled to immunity under the Eleventh Amendment."

8

(citing *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 240-41 (3d Cir. 2005))). Nor has Plaintiff shown that Congress has authorized Plaintiff's Fourteenth Amendment claim against the State Judiciary. To the contrary, as Defendants correctly assert, "in passing [42 U.S.C.] § 1983"—the vehicle for private citizens to remedy violations of their federal civil rights—"[Congress] had no intention to disturb the States' Eleventh Amendment immunity." (MTD 7 (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2310, 105 L. Ed. 2d 45 (1989)).) *See Wolf v. Escala*, Civ. No. 14-5985, 2015 WL 2403106, at *13 (D.N.J. May 20, 2015).

For these reasons, Plaintiff's claims against the State Judiciary do not fall into any identifiable exception and are thus barred by Eleventh Amendment sovereign immunity. Therefore, the action against the State Judiciary is dismissed pursuant to Rule 12(b)(1).

2. Chief Justice Rabner

Plaintiff also sued Chief Justice Rabner in his "official and individual capacities under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908)." (Am. Compl. ¶ 27.) "Under the Eleventh Amendment, state officials acting in their official capacity cannot be sued unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015). Moreover, "[a] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." *Estate of Bardzell v. Gomperts*, 515 F. Supp. 3d 256, 266 n.6 (D.N.J. 2021) (quoting *Allen v. N.J. State Police*, 974 F.3d 497, 506 (3d Cir. 2020)).

The *Ex parte Young* decision provides another exception to Eleventh Amendment immunity where, "in certain circumstances, a plaintiff may bring a federal suit against state officials." *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Labor & Indus.*, 985 F.3d

189, 193 (3d Cir. 2021) (emphasis omitted). This exception "requires [the Court] to 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law' and whether it 'seeks relief properly characterized as prospective.'" *Id.* at 193-94 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).[2] A plaintiff may not invoke this exception when seeking an award of damages or any other form of retroactive relief. *See Blueprint Capital Advisors, LLC v. Murphy*, Civ. No. 20-07663, 2022 WL 17887229, at *11 (D.N.J. Dec. 23, 2022) ("The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages that must be paid from public funds in the state treasury.").

First, the relief Plaintiff seeks is not truly prospective in nature; the claim is for a monetary award to remedy a past harm, thus triggering Eleventh Amendment immunity. The Third Circuit has held that the Eleventh Amendment bar against "retroactive relief includes forms of equitable relief that are functionally equivalent to damage awards," such as the declaration and, in turn, the backpay Plaintiff seeks here. *Christ the King Manor, Inc. v. Sec'y United States HHS*, 730 F.3d 291, 319 (3d Cir. 2013); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) ("[R]elief that essentially serves to compensate a party injured in the past by the action of a state official, even though styled as something else, is barred by the Eleventh Amendment."). "The label given to the requested relief is 'of no importance' – we must 'look to the substance rather

---

[2] Although *Ex parte Young* held that the Eleventh Amendment does not bar a party from suing for prospective injunctive relief on the basis of federal law, the Supreme Court later held in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), that "state officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity." *Balsam*, 607 F. App'x at 183. Therefore, Plaintiff's state claims under the No Diminution Clause of the New Jersey Constitution are likewise barred for the reasons set forth above.

10

than the form of the relief requested' to determine if it is barred by the Eleventh Amendment." *Christ the King Manor, Inc.*, 730 F.3d at 319 (citing *Edelman*, 415 U.S. at 663).

Although Plaintiff frames the relief sought as involving an ongoing constitutional violation, Plaintiff is ultimately seeking to recover a monetary award from the State related to her prior suspension. (*See* Am. Compl. ("Plaintiff seeks an Order or Injunction directing Defendants to . . . remit Plaintiff's backpay of salary for the five-years she was suspended without pay."); Opp'n 11-12 ("Plaintiff's Action only seeks the disgorgement of her own property which continues to be withheld in violation of due process despite Defendants admitting that only some but not all of the property should be withheld (by way of a three[-]month suspension as opposed to a five[-]year suspension).").) Thus, the relief Plaintiff seeks is functionally equivalent to a request for damages, despite her attempt to plead otherwise. *See Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) ("Unless the state has waived its immunity, a back pay award, regardless of how it is described, is barred by the eleventh amendment because it is 'measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.'" (quoting *Edelman*, 415 U.S. at 668)).

Plaintiff relies on several cases to assert that the *Ex parte Young* exception should apply to her action against Chief Justice Rabner. But in describing *Edelman*, for instance, Plaintiff does not confront any portion of its holding that undercuts Plaintiff's position. In *Edelman*, the Supreme Court stated:

> We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled "equitable" in nature. The Court's opinion in *Ex parte Young* hewed to no such line.

11

[415 U.S. at 666.]

The Supreme Court further noted that even when courts have authorized relief that impacted a state's treasury, "the fiscal consequences to state treasuries in [those] cases were the necessary result of compliance with decrees which by their terms were prospective in nature." *Id.* at 667-68. And the Supreme Court concluded that "an ancillary effect on the state treasury is a permissible and often an inevitable consequence of" relief falling within the *Ex parte Young* exception. *Id.* at 668. Here, Plaintiff does not seek prospective relief. Plaintiff seeks "payment of state funds"—her salary during her roughly five-year suspension (Opp'n 11-12)—"not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation," *Edelman*, 415 U.S. at 668. The backpay of Plaintiff's salary is more than a mere "ancillary effect" or "fiscal consequence" of her claim for relief—it is the ultimate aim of Plaintiff's lawsuit as alleged.

Plaintiff also relies on *Milliken v. Bradley*, 433 U.S. 267, 289 (1977), for the proposition that the Supreme Court has upheld a court order requiring a state to pay money "notwithstanding [its] direct and substantial impact on the state treasury." (Opp'n 11 (quoting *Milliken*, 433 U.S. at 289)). In *Milliken*, the Supreme Court held that an order requiring the State and local school board to pay for educational programs as part of an effort to desegregate a school system did not violate the Eleventh Amendment because the relief was "ordered into effect prospectively," and "could not instantaneously restore the victims of unlawful conduct to their rightful condition, . . . as could a retroactive award of money." 433 U.S. at 274, 290 n.21. "That the programs are also 'compensatory' in nature," the Supreme Court made clear, "does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system." *Id.* at 290.

Here, unlike in *Milliken*, Plaintiff seeks an award of money—"backpay of salary for the five-years she was suspended without pay" (Am. Compl. 7)—that would essentially "wipe the slate clean by one bold stroke," *Milliken*, 433 U.S. at 290; *see N.J. Educ. Ass'n v. New Jersey*, Civ. No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012) (ruling that redress for "a single act that continues to have negative consequences for the Plaintiffs" would be "retroactive in nature and is therefore barred by the Eleventh Amendment"); *see also Williams v. Connolly*, Civ. No. 17-1631, 2017 WL 5479508, at *9 (D.N.J. Nov. 15, 2017) (noting that although "the occurrence of any event . . . always echoes on into the future," the "injunction to remit the withheld welfare benefits" sought in *Edelman* was "retroactive" because "the challenged action was no longer in-progress, not that its consequences continued").

Second, Plaintiff has not alleged an ongoing violation of federal law required for invoking the *Ex parte Young* exception. *ASAH*, 2017 WL 2829648, at *7. There must be a real and immediate threat of repeated injury. *See Chavis v. United States*, 597 Fed. Appx. 38, 42 (3d Cir. 2014) ("[I]n order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he would again be the victim of the allegedly unconstitutional practice."). Here, Plaintiff's Amended Complaint solely seeks relief related to her suspension from June 12, 2013, through March 5, 2018. (Am. Compl. ¶ 39.) But after those five years, on March 6, 2018, Plaintiff was reinstated to the bench. (*Id.* ¶ 12.) Therefore, any possible due process violation ended when Plaintiff was reinstated to the bench on March 6, 2018. *See, e.g., Rich v. New Jersey*, Civ. No. 14-2075, 2015 WL 2226029, at *9 (D.N.J. May 12, 2015) (finding the plaintiffs' claim for declaratory and injunctive relief as to alleged employment discrimination by their former employer did not relate to "continuing or ongoing violations of federal law," because plaintiffs were already terminated); *DiNoia v. Cumbo*, Civ. No. 12-03175, 2015 WL 6739114, at *5 (D.N.J.

Nov. 4, 2015) (finding plaintiff's request for "a judgment or declaration from this Court that Defendants' past conduct, *i.e.*, his arrest and detention, violated federal law," "does not relate to an ongoing violation of law"). In other words, even if Plaintiff did have a property right to her salary, as she asserts (*see* Opp'n 4-9), the failure to pay Plaintiff a salary during her suspension is no longer ongoing; it ended upon Plaintiff's reinstatement to the bench. In sum, Plaintiff's claim for relief relates not to a continuing or ongoing violation of federal law but, if anything, to an alleged past violation, nor does it seek to address future conduct as to fall under the *Ex parte Young* exception to Eleventh Amendment immunity. Plaintiff's action against Chief Justice Rabner, in his official capacity, must therefore be dismissed.

### B. Plaintiff's Claim Against Chief Justice Rabner in His Individual Capacity

It appears that Plaintiff's sole basis for asserting a claim against Chief Justice Rabner, in his individual capacity, is through application of the *Ex parte Young* exception. (*See* Am. Compl. ¶ 27 ("Chief Justice Rabner is being sued in his official and individual capacities under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).").) To reiterate, *Ex parte Young* provides an exception to Eleventh Amendment immunity, which does not necessarily bar claims against officials in their individual capacities. *See Slinger v. New Jersey*, 366 Fed. Appx. 357, 360-61 (3d Cir. 2010) (holding that the District Court erred by applying Eleventh Amendment immunity to officials sued in their individual capacities, based on the Supreme Court's holding that "the Eleventh Amendment does not bar suits brought against state officials in their individual capacities," because "state officials, sued in their individual capacities, are persons within the meaning of [42 U.S.C. §] 1983" (citing *Hafer v. Melo*, 502 U.S. 21 (1991))). In other words, the *Ex parte Young* exception does not provide a basis for asserting claims against officials in their individual capacity.

14

As Plaintiff has asserted no other legal basis for asserting such a claim, the Court will also dismiss Plaintiff's claim against Chief Justice Rabner in his individual capacity.[3]

### C. Plaintiff's Remaining Arguments

Despite Defendants' moving to dismiss Plaintiff's Amended Complaint on jurisdictional grounds pursuant to Rule 12(b)(1), Plaintiff makes several substantive arguments to establish that she has a property interest in her salary pursuant to the No Diminution Clause under the New Jersey Constitution. However, the Court need not address whether Plaintiff has a property interest in her salary under the New Jersey Constitution to determine that Defendants are immune from suit in this case.

### IV.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims against the State Judiciary are barred by Eleventh Amendment immunity. The Court further finds that Chief Justice Rabner, in his official capacity, is immune from suit because Plaintiff's claims do not fall within the *Ex parte Young* exception to Eleventh Amendment immunity. Finally, the Court finds that the Amended Complaint fails to state a claim against Chief Justice Rabner in his individual capacity. Thus, the Court will dismiss Plaintiff's claims without prejudice. *See Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (holding that dismissal based on Eleventh Amendment immunity is a "threshold, nonmerits issue" and should be without prejudice). Plaintiff will have thirty (30) days in which to file an amended complaint, to the extent Plaintiff can cure the deficiencies noted herein.

---

[3] "A court may sua sponte dismiss a complaint under Fed. R. Civ. P. 12(b)(6) after service of process." *Germany v. Power 105.1 Radio*, 790 F. App'x 442, 443 n.1 (3d Cir. 2019) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d Cir. 2002)).


Dated: April 28, 2023

_____
GEORGETTE CASTNER, U.S.D.J.