UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CARLIA BRADY,

       Plaintiff,

  v.

ANDREW SIDAMON-ERISTOFF, *et al.*,

       Defendants.

Case No. 21–07895–ESK–MJS

OPINION

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on defendants Andrew Sidamon-Eristoff, Robert Romano, Ford Scudder, and Elizabeth Maher Muoio's motion to dismiss (Motion) the second amended complaint (ECF No. 36 (Second Am. Compl.)) of plaintiff Carlia Brady (ECF No. 40). Plaintiff filed an opposition (ECF No. 46 (Pl.'s Opp'n Br.)) to which defendants replied (ECF No. 50 (Defs.' Reply Br.)).[1] This matter was reassigned to me after briefing had concluded. (ECF No. 53.) For the following reasons, the Motion will be GRANTED.

    **I.**    **BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff is a former New Jersey Superior Court judge. (Second Am. Compl. p. 4.) Defendant Muoio is the State Treasurer of New Jersey. (*Id.* p. 5.) Defendants Sidamon-Eristof, Romano, and Scudder (collectively, Former

---

[1] Following defendants' reply brief, plaintiff filed a letter renewing her request for oral argument. (ECF No. 52.) Motions filed within this District are decided on the papers unless a judge grants a party's request for oral argument or *sua sponte* directs the parties to participate in oral argument. L. Civ. R. 78.1(b). After review of the parties' briefing, I conclude that oral argument is unnecessary to decide the Motion. *See Nwaohia v. Wal-Mart Stores, Inc.*, No. 18–10648, 2022 WL 3152637, at *2–3 (D.N.J. Aug. 5, 2022).

State Treasurers) each served as State Treasurer during the period relevant to this action. (*Id.* pp. 4, 5.)

In 2013, several months after her appointment to the bench, plaintiff was arrested on the "unsustainable charge" of harboring a fugitive after her boyfriend and father of her unborn child was wanted for robbery. (*Id.* pp. 1, 2.) Plaintiff was ultimately indicted on one count of second-degree official misconduct and two counts of third-degree hindering apprehension, all of which were eventually dismissed. (*Id.* p. 2, 3.) She was suspended from judicial duties from June 12, 2013 to March 5, 2018, at which time her salary was $165,000 per year. (*Id.* p. 3.) Plaintiff claims that pursuant to the No-Diminution Clause of the New Jersey Constitution, her salary could not have been withheld during her suspension and, instead, irrevocably vested and became her property. (*Id.* pp. 3, 4 (citing N.J. Const. Art. 6, §6, Para. 6).) Defendants acted *ultra vires* and contrary to law and continue to exercise dominion over her property, totaling $780,558. (*Id.* p. 4.)

Plaintiff filed this action against the State of New Jersey Judiciary in April 2021. (ECF No. 1.) The complaint was later amended to add New Jersey Supreme Court Chief Justice Stuart Rabner and fictional defendants. (ECF No. 21 pp. 4, 5.) Plaintiff sought a declaration stating that the then-defendants were in violation of the No-Diminution Clause and Fourteenth Amendment of the United States Constitution and an injunction order directing the then-defendants to "remit Plaintiff's backpay of salary for the five-years she was suspended without pay." (*Id.* pp. 6, 7.)

District Judge Georgette Castner dismissed plaintiff's claims without prejudice on Eleventh Amendment immunity grounds and provided 30 days to amend. (ECF No. 34 (Apr. 28, 2023 Op.); ECF No. 35.) In discussing plaintiff's claims against Chief Justice Rabner in his official capacity, Judge Castner concluded that the relief sought by plaintiff was "not truly prospective

in nature; the claim [wa]s for a monetary award to remedy a past harm, thus triggering Eleventh Amendment immunity" and "[a]lthough [p]laintiff frame[d] the relief sought as involving an ongoing constitutional violation, [p]laintiff [wa]s ultimately seeking to recover a monetary award from the State related to her prior suspension." (Apr. 28, 2023 Op. pp. 10, 11.)

Plaintiff filed the operative second amended complaint, swapping in defendants and alleging illegal and *ultra vires* seizure of property and *per se* taking. (Second Am. Compl. pp. 5–8.) Plaintiff claims that, beginning in June 2013 and continuing until March 2018, defendants seized her property in violation of their constitutional duties and statutes governing their performance, and transferred her property successively to one another as State Treasurers. (*Id.* pp. 5, 6.) These actions were illegal, *ultra vires*, and in violation of the No-Diminution Clause, according to plaintiff, and the withheld salary never became the property of the State of New Jersey but rather remained her property, necessitating disgorgement. (*Id.* p. 7.) Plaintiff's *per se* taking claim is premised on the Fifth Amendment's Takings Clause, applicable to states under the Fourteenth Amendment. (*Id.*) Plaintiff asserts that defendants have withheld $780,558, which will presumably be used by defendants for public use. (*Id.* pp. 7, 8.)

## II.  STANDARD AND PARTY ARGUMENTS

### A.  <u>Motions to Dismiss</u>

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

"[W]here … the Eleventh Amendment precludes a suit, the court in which the plaintiff filed the action lacks subject matter jurisdiction." *Tonge v. New Jersey*, 737 F. App'x. 79, 80 (3d Cir. 2018) (alteration and omission in original) (quoting *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 243, 249 (3d Cir. 2003));

3

*but see In re Venoco LLC*, 998 F.3d 94, 109 (3d Cir. 2021) (noting that the Supreme Court has never decided whether Eleventh Amendment immunity is a matter of subject-matter jurisdiction); 17A James Wm. Moore *et al.*, *Moore's Federal Practice* §123.20[1] (2024) (finding that "[i]t is unclear whether the issue of Eleventh Amendment immunity is a matter of federal subject matter jurisdiction" but "most courts hold that Eleventh Amendment immunity is jurisdictional or quasi-jurisdictional"). The Third Circuit has consistently affirmed dismissals for lack of subject-matter jurisdiction when the defendant was immune from suit under the Eleventh Amendment. *See, e.g.*, *Callender v. New Jersey*, 674 F. App'x 146, 147 (3d Cir. 2017); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013); *Gary v. Pa. Hum. Rels. Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012).

### B. Party Arguments

The swapping out of judiciary defendants in favor of the current and Former State Treasurers was a superficial change, according to defendants, and the second amended complaint still suffers from three fatal flaws: it pleads a past violation, that violation is of state law, and the relief sought is retrospective. (ECF No. 40–1 pp. 12, 13.) Defendants argue that plaintiff is seeking relief for unpaid past wages and that her naming the Former State Treasurers—who cannot possibly be engaged in current violations—highlights the fact that she is seeking a remedy for an alleged past wrong. (*Id.* pp. 14, 15.) Furthermore, plaintiff is alleging a violation of the No-Diminution Clause, a state-law claim that does not fit within the *Ex parte Young* exception to Eleventh Amendment immunity. (*Id.* p. 15.) Defendants cite Judge Castner's ruling that plaintiff is seeking the equivalent of damages in the form of unpaid wages and contend that creative pleading does not change the fact that plaintiff is seeking retroactive relief. (*Id.* pp. 16–18.) And even if plaintiff's claims are not barred by the Eleventh Amendment, defendants argue that plaintiff does

not have an entitlement to her unpaid salary because the New Jersey Supreme Court has discretion to suspend judges with or without pay. (*Id.* p. 25.) Finally, citing *DePascale v. State*, 47 A.3d 690 (N.J. 2012), defendants assert that the intent of the No-Diminution Clause is to promote judicial independence rather than provide a benefit to judges. (*Id.* pp. 26, 27.)

Plaintiff counters that defendants' jurisdictional challenge does not address her Takings claim and that defendants assert substantive defenses despite the fact that there is no Rule 12(b)(6) motion before the Court. (Pl.'s Opp'n Br. p. 3.)[2]  No matter the discretion afforded to the New Jersey Supreme Court, the Treasury is prohibited from withholding or reducing her salary, according to plaintiff. (*Id.* p. 4.) Plaintiff asserts that her salary was set by statute, could not be reduced pursuant to the No-Diminution Clause, and vested and became her property. (*Id.* pp. 4, 5.) The United States Constitution protects rather than creates property interests, with money treated like any other property for the purposes of the Takings Clause. (*Id.* p. 5.) Finally, plaintiff argues that she is seeking disgorgement of her own property that is illegally being withheld and that specific relief from an officer who acted beyond their statutory authority is not barred by the Eleventh Amendment. (*Id.* pp. 7–9.)

---

[2] Because I conclude that the second amended complaint, on its face, seeks retrospective relief for an alleged past violation of law, I do not consider the purpose of the No-Diminution Clause or otherwise reach the merits of plaintiff's claims. *See Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 277 (3d Cir. 2016) ("[A] federal court may not rule on the merits of an action without first ascertaining whether it has subject matter jurisdiction to do so."); *Rothman v. New Jersey*, Case No. 19–13011, 2020 WL 409757, at *2 (D.N.J. Jan. 24, 2020) (declining to reach the merits of the plaintiff's Fourth Amendment claim in considering a motion to dismiss for lack of subject-matter jurisdiction).

### III. DISCUSSION

#### A. <u>Eleventh Amendment Immunity</u>

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The actual scope of Eleventh Amendment immunity extends beyond the bounds of its text, "[a]s a rule, 'federal courts may not entertain a private person's suit against a State' unless the State has waived its immunity or Congress has permissibly abrogated it." *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (quoting *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011)). The Treasury Department and its employees sued in their official capacities are arms of the state for Eleventh Amendment immunity purposes. *See Pacheco v. Dep't of Treasury*, Case No. 18–01615, 2020 WL 7029485, at *2 (D.N.J. June 29, 2020). The Eleventh Amendment's "broad prohibition" may be averted only when 1) Congress authorizes such a suit in exercising its power to enforce the Fourteenth Amendment, 2) the State has waived its sovereign immunity by consenting to suit, or 3) a private party sues "a state official to prevent the official from violating federal law." *In re Flonase Antitrust Litig.*, 879 F.3d 61, 68 (3d Cir. 2017). The third exception, the *Ex parte Young* exception, is at issue here.[3]

For the *Ex parte Young* exception to apply, "there must be both an ongoing violation of federal law and a request for relief that can be properly characterized as prospective." *Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023). The exception "is a fiction that has been narrowly construed" and "does not apply 'when the state is the real, substantial party in interest.'" *Waterfront*

---

[3] In *Ex parte Young*, the Supreme Court held that state sovereignty cannot be offended by a federal judicial command to the state officer to conform his conduct to the United States Constitution in the future. 209 U.S. 123, 159–60 (1908).

*Comm'n of N.Y. Harbor*, 961 F.3d at 238 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n. 25 (1984) and then *Va. Off. for Prot. & Advoc.*, 563 U.S. at 255). Courts are to determine whether the relief sought is against the officer or the sovereign by "examin[ing] 'the *effect* of the relief sought.'" *Id.* at 238–39 (quoting *Pennhurst State Sch. & Hosp.*, 465 U.S. at 107). The state "is generally the real, substantial party in interest if the 'judgment sought would expend itself on the public treasury or domain, or interfere with public administration,' or if relief consists of 'an injunction requiring the payment of funds from the State's treasury[,]'" in which case sovereign immunity applies. *Id.* at 239 (quoting *Va. Off. for Prot. & Advoc.*, 563 U.S. at 255–57).

"The Third Circuit has made clear that while back pay is injunctive in nature, it constitutes impermissible retrospective relief . . . ." *Weisman v. N.J. Dep't of Hum. Servs.*, 817 F. Supp. 2d 456, 464 n. 11 (D.N.J. 2011) (discussing actions brought under 42 U.S.C. § 1983 (Section 1983)); *see also McGriff v. State Civ. Serv. Comm'n*, 650 F. App'x 95, 97 (3d Cir. 2016) (affirming dismissal of the plaintiff's complaint, which sought backpay, on Eleventh Amendment immunity grounds); *Laskaris v. Thornburgh*, 661 F.2d 23, 25–26 (3d Cir. 1981) ("[A]n action in federal court for damages or back pay against a state official acting in his official capacity is barred because such retrospective relief necessarily depletes the state treasury."). Plaintiff invokes Section 1983 in naming defendants (Second Am. Compl. p. 4, 5) and though she relies on the No-Diminution Clause of the New Jersey Constitution and Takings Clause of the United States Constitution, I see no reason to stray from this general principle and award plaintiff what is in all practical respects backpay.

Describing the relief sought as retrospective backpay is incorrect, according to plaintiff. Rather, this case is about property that has vested in her and defendants' continued withholding of her property from her. (Pl.'s Opp'n Br. pp. 5, 9.) If plaintiff were correct, seemingly any plaintiff in any

number of types of actions ranging from tort to employment to civil rights could avoid the Eleventh Amendment immunity bar by simply recharacterizing the relief sought as a continuing violation rather than damages from a past wrong. It is a wonder then why plaintiffs do not routinely circumvent the Eleventh Amendment by claiming that the state continues to withhold money to which they are entitled. In reality, plaintiff has not discovered a novel carveout, but rather a worn path that plaintiffs before her have repeatedly and unsuccessfully treaded in seeking to avoid Eleventh Amendment immunity. *See, e.g.*, *Heine v. Comm'r of Dep't of Cmty. Affs. of N.J.*, Case No. 11–05347, 2016 WL 7042069, at *7 (D.N.J. Dec. 1, 2016) ("Even a claim that nominally seeks injunctive or declaratory relief will not circumvent the Eleventh Amendment prohibition if, in its actual substance, it seeks retrospective relief."); *Hackett v. New Jersey*, Case No. 10–02547, 2010 WL 4553526, at *2 (D.N.J. Nov. 3, 2010) (finding that the prospective injunctive relief sought for alleged disclosure of the plaintiff's social security number was "in essence … compensation for a past injury"); *Farmland Dairies, LLC v. Passaic Valley Sewerage Comm'rs*, Case No. 05–05544, 2006 WL 3833477, at *4 (D.N.J. Dec. 29, 2006) (concluding that the plaintiff's requested relief, including an injunction from future billing until its prepaid credit was exhausted, was "nothing more than a request for monetary damages poorly disguised as a request for prospective injunctive relief").

Plaintiff similarly does not allege an ongoing violation of federal law. Plaintiff names the Former State Treasurers as defendants presumably to establish a chain of custody of her allegedly withheld property. However, they cannot be engaged in an ongoing violation within a position they no longer hold. Furthermore, any withholding of her salary concluded in March 2018. (Second Am. Compl. pp. 4, 5.) Though these "earlier actions may have present effect, that does not mean that they are ongoing. … The lingering effects of that discrete past action do not convert it into an ongoing violation." *Merritts*, 62

F.4th at 772; *see also Tung v. Superior Ct. of N.J.*, 854 F. App'x 443, 445 (3d Cir. 2021) ("*Ex parte Young*'s exception is limited to ongoing *violations*, not ongoing effects.").

I am not persuaded by plaintiff's reliance on *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005). *Taylor* involved stock claimed by California as "unclaimed property" and for which the state controller allegedly did not provide notice in the manner required by statute. 402 F.3d at 925–29. The court cited California law that distinguished between escheated [4] and permanently escheated property. *Id.* at 930–31. Property that was not permanently escheated was held in a trust fund for all parties having an interest in the property. *Id.* at 930. Therefore property that was already transferred to the state's general fund remained in trust and was subject to "retransfer" to the Unclaimed Property Fund. *Id.* at 931. The court likened such property to cars towed and held in government custody for future retrieval by their owners. *Id.* The claims fell within the *Lee-Malone* line of cases,[5] according to the Ninth Circuit, because the controller allegedly acted *ultra vires* and the general rule that relief was barred because it would come in the form of state funds was inapplicable because the property was being held in trust for its true owners. *Id.* at 933–35.

---

[4] "Escheat is … a means of dealing with money where money and property are unclaimed and the person entitled to it is dead or gone, gone to a degree that the person cannot be found and there is no other individual with a good claim." *Taylor*, 402 F.3d at 926.

[5] Pursuant to *Malone v. Bowdoin*, 396 U.S. 643, 647 (1962), which limited the scope of *United States v. Lee*, 106 U.S. 196 (1882), an exception to the Eleventh Amendment immunity for claims for the return of property is preserved if: "(1) [the claim is] based on the public official having acted beyond his statutory authority (the 'ultra vires exception') or (2) the plaintiff's theory must be that the action leading to the government's possession of the property was constitutionally infirm." *Taylor*, 402 F.3d at 933 (footnote omitted).

The reasoning in *Taylor* was relied upon within this District in *Salvato v. Harris*, Case No. 21–12706, 2022 WL 1224962 (D.N.J. Apr. 26, 2022). Similar to *Taylor*, the plaintiff claimed seizure of stock without proper notice. *Salvato*, 2022 WL 1224962, at *1–2. The court recognized that under the New Jersey Uniform Disposition of Unclaimed Property Act, collected funds were held in trust and thus "the Eleventh Amendment [wa]s no bar to the claims … insofar as [the p]laintiff's claims only request[ed] the return of her and the class's *own property*." *Id.* at *4–6. Plaintiff argues that defendants improperly seek to distinguish *Taylor* simply based on the fact that it pertained to custodial escheat and involved stock rather than withheld salary. (Pl.'s Opp'n Br. pp. 7–9.) However, I find comparisons between the type of property sought, where the property has been held, the defendants named, and how the property came within the state's possession to be appropriate.

Plaintiff alleges that her salary was withheld, not that it was seized and is being held in trust as in *Taylor* and *Salvato*. *See N.E. Med. Servs., Inc. v. Cal, Dep't of Health Care Servs., Health and Hum, Servs. Agency, Cali.*, 712 F.3d 461, 469–70 (9th Cir. 2013) (concluding that *Taylor* did not apply to the plaintiffs' claim for reimbursement even though the plaintiffs "previously held the Disputed Funds" because the plaintiffs did "not seek the return of their own property seized pursuant to a unique statutory scheme. No provision of state law provide[d] that the 'seized' Disputed Funds [we]re held in trust like the seized property in … *Taylor*."). Further, rather than being maintained in a separate fund or, like in *Taylor*, subject to retransfer from the state general fund, plaintiff makes clear that the funds at issue have always been in the state general fund. (*Id.* at 8, 9.); *see also* N.J.S.A. 2B:2–5 ("The State shall be responsible for the cost of the salaries of the justices of the Supreme Court, judges of the Superior Court and judges of the Tax Court.").

I conclude that *Taylor* and *Salvato* are distinguishable from this case and that this matter does not fall within the *Lee-Malone* line of cases. Traditional Eleventh Amendment principles apply, meaning that any "retroactive award of monetary relief against the State is 'measured in terms of a monetary loss resulting from a *past* breach of a legal duty on the part of the defendant state officials'" and barred by the Eleventh Amendment. *See Deal v. Velez*, 244 F. Supp. 3d 435, 442 (D.N.J. 2017) (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). To the extent that plaintiff relies on New Jersey constitutional or statutory law, "[t]he Eleventh Amendment also prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities." *State Troopers Non-Commissioned Officers Ass'n of N.J. v. New Jersey*, 399 F. App'x 752, 754 n. 4 (3d Cir. 2010); *see also Balsam v. Sec'y of N.J.*, 607 F. App'x. 177, 183 (3d Cir. 2015) ("[S]tate officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity.").

## B. Takings Clause

The Fifth Amendment of the United States Constitution prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. "The Takings Clause applies to state action through the Fourteenth Amendment." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012). "[T]he Takings Clause, as incorporated against the states, did not alter the states' traditional immunity from federal suits, at least if state courts remain open to hear these claims." *Frein v. Pa. State Police*, 47 F.4th 247, 257 (3d Cir. 2022).

The parties quarrel over the interplay between the Takings Clause and Eleventh Amendment immunity and whether one supplants the other, with defendants citing *Frein* for the proposition that application of the Takings

11

Clause to the states did not change general immunity principles. (Pl.'s Opp'n Br. p. 5; Defs.' Reply Br. pp. 8–10.) Though I agree with defendants' reading of *Frein*, I conclude that the more appropriate question is whether the Takings Clause applies to the facts of this case. Decisions within this Circuit indicate that it does not.

Most persuasively, a court within the Eastern District of Pennsylvania has held that paycheck deductions do not give rise to a Takings claim. *See Scott v. Phila. Hous. Auth.*, Case No. 10–04723, 2011 WL 1791095, at *5–6 (E.D. Pa. May 11, 2011). The plaintiff in *Scott* alleged that she was compelled to contribute money and gifts for authority events and forced to donate a portion of her paycheck or an annual lump sum to a nonprofit created by the authority's executive director. *Id.* at *1. Synthesizing analogous cases involving incarcerated individuals and federal employees, the court concluded that "the weight of authority from courts that have considered this issue demonstrates that the Takings Clause is inapplicable when a plaintiff sues for unpaid wages." *Id.* at *5–6. The reasoning of *Scott* has been cited within this District. *See Falco v. Zimmer*, Case No. 13–01648, 2015 WL 7069653, at *3 n.5 (D.N.J. Nov. 12, 2015).

Further support comes from *Steinberg v. Supreme Court of Pennsylvania*, in which the petitioner was a disbarred attorney who sought a *pro rata* refund of the annual assessment fee he had paid to practice law. Case No. 09–00086, 2009 WL 1684663, at *1–3 (W.D. Pa. June 10, 2009), *aff'd*, 419 F. App'x 198 (3d Cir. 2011). While the relief sought by the petitioner was unclear, the court concluded that "any attempt on his part to obtain monetary relief (either from the Pennsylvania Supreme Court or from the individual Justices in their official capacities) would be barred by the Eleventh Amendment." *Id.* at *24.

### IV. CONCLUSION

Plaintiff seeks retrospective relief for alleged violations that have ceased. Eleventh Amendment immunity is not altered by the Takings Clause and persuasive authority within this Circuit indicates that plaintiff cannot obtain the relief she seeks. Accordingly, the Motion (ECF No. 40) will be GRANTED and the second amended complaint will be dismissed without prejudice. *See Merritts*, 62 F.4th at 772 ("Eleventh Amendment immunity is a 'threshold, nonmerits issue' that 'does not entail any assumption by the court of substantive law-declaring power,' and a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice." (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007))). An appropriate order accompanies this opinion.

                                                    */s/ Edward S. Kiel*
                                                  **EDWARD S. KIEL**
                                                  **UNITED STATES DISTRICT JUDGE**

Dated: August 1, 2024